**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DWAIN HARROUN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 09 C 2522** |
| ) | |
| **SOUTHERN WINE & SPIRITS** ) | |
| **OF ILLINOIS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY,  District Judge:

Dwain Harroun is a district manager at Southern Wine and Spirits of Illinois, Inc.

(Southern).  In 2004, management at Southern transferred Harroun from his position as

a district manager to a position in the warehouse to assist with problems it was having

with its wine supply.  Harroun was displeased with the transfer, which he viewed as a

demotion.  Harroun was eventually returned to his original position as district manager.

In 2006, Harroun went on medical leave after injuring his back.  He returned to work as

a district manager several months later, but he was assigned to a different territory from

the one he had managed before he went on leave.

Harroun argues that his initial transfer to the warehouse amounted to age

discrimination.  He also contends that by delaying his return to work after medical leave

for his back injury, Southern impermissibly discriminated against him on the basis of

perceived disability and that both the delay his subsequent assignment to a new

territory amounted to retaliation for his complaints about age discrimination.

Harroun sues Southern for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, for retaliation under the ADEA,[1] and for discrimination on the basis of disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117.  Southern has moved for summary judgment on all of Harroun's claims.  For the reasons stated below, the Court grants the motion.

**Background**

Southern is a wholesale distributor of alcoholic beverages.  Harroun was hired by one of Southern's predecessors as a district manager (a sales position) in September 2002.  At the time he was hired, he was over forty years old.  In 2003, Harroun's employer combined with another wholesaler to become Southern.  Combining the operations of two different wholesalers was challenging and resulted in serious problems in the warehouse, particularly involving wine products.  Wines were not being sorted properly according to vintage when they arrived at the warehouse, and the warehouse staff was insufficiently familiar with the nuances of wine products to ensure that wine orders were being fulfilled properly.  Southern assigned a district manager with experience with wine to work in the warehouse as a "sales fulfillment manager" to address this problem.

In July 2004, Harroun was called into a meeting with Danny Romano, Southern's president, and John Acott, Southern's vice president of retail wine and Harroun's

---

[1] Harroun's complaint actually claims that his retaliation claim arises under Title VII, 42 U.S.C. §2000e.  Because his retaliation claim is based on his complaints about age discrimination, the Court assumes he intended to bring this claim under the retaliation section of the ADEA, 29 U.S.C. § 623(d).

supervisor.  Romano and Acott told Harroun that he was being assigned to the warehouse in the role of sales fulfillment manager to assist with the problems that were occurring with fulfilment of wine orders.  Harroun was the third person to be assigned to the role.  Both of the others who preceded Harroun were also former district managers and were also over forty.

Harroun, who did not have any experience with warehouse operations, told Romano and Acott that he did not want the position.  Romano told Harroun that the company needed him in the warehouse and he was expected to take the position.  Harroun was also told that his compensation in the warehouse would be the same as it was in his position as district manager.

Harroun began working in the warehouse, where he opened and sorted cases of wine by vintage, assisted with fulfillment of wine orders, and passed out samples.  On August 23, 2004, Harroun filed a grievance with his union, alleging that his transfer to the warehouse position was a demotion and was the result of age discrimination.  He continued to complain about his transfer to the warehouse during his time there, including a complaint to Yvonne Mug in Southern's human resources department in which Harroun also mentioned age discrimination.

On November 30, 2004, Harroun was called into a meeting with several Southern executives and a union representative.  In that meeting, Harroun again communicated his dissatisfaction with his position in the warehouse and his belief that his assignment there was based on age discrimination.  Barry Goldberg, a senior vice president at Southern who had called the meeting, assured Harroun that Southern did not discriminate and that he was moved to the warehouse not because of his age but

because it had identified an important position that needed to be filled and Harroun had the knowledge and experience to do it. Goldberg told Harroun that he felt Harroun was responsible for much of the improvement that had been seen in the warehouse in the prior few months. Goldberg went on to say that Southern knew Harroun was unhappy in the warehouse, however, and had therefore decided to allow him to return to his former district manager position. After the meeting, Goldberg sent Harroun an e-mail confirming the offer to return to his district manager position and requesting a reply by the close of business on December 3, 2004.

On December 6, 2004, Harroun sent Goldberg an email that said, among other things "[p]utting me back in the [district manager] position does not remedy the situation." Def.'s Mot. for Summ. J., Ex. 21. Harroun identified several issues that he felt would persist even if he were moved back to this district manager role. These included what he characterized as a "conspir[acy]" on the part of Southern's management "to maliciously and unethically to push [him] out of sales and eventually force [him] out of this organization"; ongoing age discrimination; the fact that he believed his opportunities for advancement within the organization had been compromised; undercompensation for the period he spent in the warehouse; and an allegation that account bribery was taking place within Southern that "the Illinois Liquor Commission would not only object to. . . but severely punish." *Id.* Harroun's e-mail concluded: "as I mentioned in the meeting. . . I must have these issues addressed prior to considering your proposal of returning to my former capacity/role as an active D.M." *Id.*

On December 11, 2004, Goldberg replied to Harroun's e-mail. He reiterated that

4

Southern does not discriminate and directed Harroun to a portion of the employee handbook that states that employees who make complaints "can be certain that no retaliation will be taken against them for accurately reporting harassment." Goldberg stated that "you will continue to be held accountable for the performance of your job. The same accountability we hold all employees to. There will be no retaliation or special treatment." Goldberg's e-mail concluded that "[s]ince you have not accepted our offer, I can only assume that you are no longer interested in [his former district manager position]. . . . Please continue to work in the warehouse in your current capacity." Harroun continued to work in the warehouse.

In April 2005, Harroun filed an age discrimination complaint with the Equal Employment Opportunity Commission (EEOC), alleging that he had been moved to the warehouse and denied his district manager position on the basis of age. In August 2005, Southern filled some vacant district manager positions, but Harroun remained in the warehouse. Harroun complained to the human resources department that he had been "passed over" in his request to return to his district manager position.

At some point in 2005, Harroun suffered an injury to his back. He had surgery in September 2005 that required him to go on medical leave. Around the same time, Jeanette Page, who was designated by Southern to investigate the bribery allegations in Harroun's December 6 e-mail, was completing her investigation. As part of her report, Page also addressed Harroun's claim that he had been moved to the warehouse as retaliation for being a "whistleblower" on the issue of account bribery. Def.'s Mot. for Summ. J., Ex. 27 at 40. Page concluded that there was no evidence that Harroun's move to the warehouse had been retaliatory, because he had made no complaints of

commercial bribery prior to or during the meeting where he learned he was being moved to the warehouse. *Id.* Nonetheless, Page concluded that Harroun was very unhappy in the warehouse position and that Southern was unhappy with his continued performance there, so she recommended that Harroun be returned to a district manager position. The company agreed with this recommendation. *Id.* at 41-42; Ex. 28 at 2-3.

Page's recommendations were issued shortly before Harroun had surgery on his back. In her letter to Harroun summarizing her findings, Page said that "[t]o the extent possible, the Company will leave the D.M. position unfilled or hire a temporary employee to fill in" during the term of Harroun's leave and that she would discuss with him "what type of accommodation that [he] will need from the company" upon his return. *Id.* Page also informed Harroun that there would be no retaliation for his complaint and stated that if he experienced anything he believed to be retaliation, he should contact her directly. *Id*.

When Harroun returned to work following his back surgery in October 2005, he was assigned to the same district manager territory he had before his move to the warehouse. During this period, he was limited in the amount of weight he could lift, and a merchandiser was assigned to assist him with lifting tasks.

In December 2006, Harroun again injured his back and was granted leave under the Family and Medical Leave Act. The leave lasted several months. During this time, Harroun's treating physician imposed gradually decreasing limitations on the amount of weight Harroun could lift, starting with five pounds and increasing to ten pounds. In August 2007, Harroun's treating physician cleared him for regular work. Southern

required Harroun to submit to a fitness for duty examination, which was standard practice for employees returning from medical leave. In that examination Dr. Fletcher, the physician Southern selected, concluded that Harroun could not lift the amounts specified in the job description for a district manager, which at the time required district managers to lift up to one hundred pounds. Dr. Fletcher noted, however, that Harroun contested that description and maintained that he was required to lift only twenty-five pounds as a district manager. Dr. Fletcher's report said that the lifting requirements of the job needed to be clarified, and he referred Harroun for a functional capacity evaluation.

The functional capacity evaluation was conducted on September 14, 2007. The examination report also noted the discrepancy between the job description from Southern and what Harroun maintained was the actual amount of lifting required of a district manager. In late 2007, Fletcher conducted a job site analysis, where he observed a district manager at work. He concluded that Harroun would be unable to perform the job without risk of further injury.

In early 2008, Southern conducted a study of the district manager position and concluded that the position required lifting only twenty-two to fifty pounds, not up to one hundred pounds as previously stated. The job description was modified accordingly. In February 2008, Southern asked Harroun's treating physician whether he could perform the duties of a district manager in light of the modified job description and the concerns Dr. Fletcher had expressed in his reports. Harroun's physician replied that he believed that if Harroun was limited to lifting twenty-five pounds "he'll do just fine." Def.'s Mot. for Summ. J., Ex. 39.

Southern continued to communicate with Harroun's physician to attempt to clarify what his restrictions were, whether the doctor felt any accommodations would need to be permanent, and whether Harroun was able to lift twenty-five pounds repeatedly, or only occasionally. At the suggestion of Harroun's physician, in late February 2008 Harroun was referred to a work conditioning program to help him get his back in shape for work. Harroun completed the program and returned to work as a district manager in March 2008. During the time he had been on medical leave, the territories for district managers had been rearranged. Harroun's new territory was different from the one he had managed prior to his move to the warehouse in 2004 and after his return to work from surgery in 2005. His new territory did, however, include some of the regions he had managed before, including the area in which he resided.

In count one of Harroun's complaint, he alleges that his initial move to the warehouse was a demotion and was based on his age, in violation of the ADEA. He also contends that when he was returned to work as a district manager in 2008, he was again discriminated against on the basis of age when he not given his original territory, and that some of his original territory was given to a younger employee. In count two, Harroun alleges that Southern retaliated against him for making a complaint about his transfer to the warehouse, saying that he was further demoted to handing out samples after he filed an age discrimination complaint with the EEOC in April 2005. He further contends that he was ready to return to work after his back injury as early as March 2007 and was cleared for regular work in August 2007 but was unfairly prevented from returning to work until March 2008. He claims that his return to work was delayed in retaliation for his 2005 filing of an age discrimination complaint. Harroun also argues

that his transfer to a new territory upon his return in 2008 was retaliation for his earlier

complaint of age discrimination.  In count three,[2] he alleges that Southern delayed his

return to work in 2008 because it regarded him as disabled and discriminated against

him on the basis of that perceived disability in violation of the ADA.  In all three claims,

Harroun also alleges that Southern did not give him a performance review in March

2009 as scheduled, which he says prevented him from applying for promotions.

Southern has moved for summary judgment on all counts.  For the reasons

stated below, the Court grants the motion.

### Discussion

Summary judgment is appropriate when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c).  In determining whether a genuine issue of material fact exists, the Court draws

"all reasonable inferences from undisputed facts in favor of the nonmoving party and

[views] the disputed evidence in the light most favorable to the nonmoving party."

*Harney v. Speedway SuperAmerica, LLC*, 556 F.3d 1099, 1104 (7th Cir. 2009).

### A.    Age discrimination claims

Harroun contends that he was originally moved to the warehouse because of his

age, in violation of the ADEA.  He further argues that his move to a different territory in

2008 after his medical leave was age discrimination.  In both instances, the complaint

alleges that similarly-situated younger employees were treated more favorably than

---

[2] This count is labeled as "count 2" in the complaint, which the Court assumes to
be in error, because the retaliation claim is also labeled as "count 2".  Harroun's ADA
claim comes immediately after the retaliation claim in the complaint, so the Court refers
to it as "count 3".

Harroun.

The ADEA protects those over the age of forty from age discrimination in the workplace. A plaintiff suing under the statute may proceed with his case using either the direct or indirect method of proof. Under the direct method, a plaintiff must produce either "direct or circumstantial evidence that the employer's decision to take the adverse job action was motivated by an impermissible purpose." *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 517 F.3d 470, 473 (7th Cir. 2008) (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003)). Circumstantial evidence "can come in the form of suspicious timing or behavior, or evidence that younger but similarly situated employees received better treatment." *Id.* at 473-74.

Under the indirect method, a plaintiff must establish a *prima facie* case of age discrimination by proving that he is over forty, his performance met the company's legitimate expectations, despite his performance he was subject to an adverse employment action, and the company treated similarly situated employees under forty more favorably. *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009). If the plaintiff satisfies these criteria, the company may provide a legitimate, nondiscriminatory reason for the action. *Id*. If the company offers such a reason, the plaintiff may challenge the stated reason is pretext. The ultimate burden to prove intentional discrimination remains with the plaintiff. *Id.*

### 1. Adverse employment action

Both the direct and the indirect methods of proof require a plaintiff to demonstrate that he suffered an adverse employment action. *Tubergen,* 517 F.3d at

473.  Because Southern argues that none of the actions about which Harroun complains rise to the level of an adverse employment action, the Court considers this factor first.  Harroun has identified three allegedly adverse employment actions in connection with his age discrimination claims:  his transfer to the warehouse in 2004; his transfer to a different region after his medical leave in 2007-2008; and his failure to receive a timely employee review in 2009.

An adverse employment action is one that significantly alters the terms and conditions of the employee's job.  *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).  To be actionable, the action must be materially adverse, not "merely an inconvenience or a change in job responsibilities."  *Id.*  A purely lateral transfer is not an adverse employment action.  *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).  If, however, a nominally lateral transfer involves a "dramatic downward shift in skill level required to do job responsibilities," *Dahm v. Flynn*, 260 F.3d 253, 257 (7th Cir. 1994), or "significantly reduces the employee's career prospects by preventing [him] from using [his] skills and experience, so that the skills are likely to atrophy and [his] career is likely to be stunted," *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004), then it constitutes an adverse employment action.

a.      Transfer to a different region after medical leave

After Harroun returned from medical leave due to his back injury, he was assigned to be the district manager of a different region from the one he had supervised before he went on leave.  He argues that this was an adverse employment action because the new region yielded fewer sales and thus he earned smaller bonuses than he had in his old region.  The Seventh Circuit has held, however, that being removed

from specific accounts and as a result experiencing a reduction in bonus does not constitute an adverse employment action. *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002). Further, during the time Harroun was on leave, the regional boundaries for district managers were reorganized, and Harroun himself admits that the region he had previously managed no longer existed as a single region when he returned. Def.'s Mot. for Summ. J., Ex. 5 (Harroun Dep.) at 121. From this, the Court concludes that no reasonable jury could find that Harroun's transfer to a different region after his leave in 2008 constituted an adverse employment action.

b.     Delay in 2009 employee evaluation

Harroun also argues that he suffered an adverse employment action when he did not receive his 2009 employee evaluation on time, which he contends left him ineligible for certain promotions. Southern, however, stated in its responses to interrogatories that Harroun's evaluation was not withheld, only delayed, and that he received the evaluation in May 2009, a delay of two months. *Id.*, Ex. 1 at 23. Harroun's deposition testimony confirms he did eventually receive a 2009 evaluation. *Id.*, Ex. 5 at 147. Furthermore, Harroun has presented no evidence that suggests he applied or intended to apply for promotional opportunities during the period his evaluation was delayed. The Court concludes that this speculative economic loss is *de minimus* and that no reasonable jury could find it constituted an adverse employment action.[3]

_____

[3] Even if the delay were an adverse employment action, the evidence shows that Harroun's evaluation was delayed along with the evaluations of all other employees supervised by Bob Bryant, Harroun's supervisor. Bryant's father was ill with cancer and Bryant delayed delivery of all his employee evaluations while he cared for his father. Harroun has offered no evidence from which a reasonable jury could find that he was

(continued...)

c.    Transfer to the warehouse

Most of Harroun's dissatisfaction and most of his allegations of age discrimination arise from his transfer to the warehouse in 2004.  Harroun was transferred from his position as district manager to a position in the warehouse, where his title was sales fulfillment manager.  He contends that this constituted an adverse employment action.  Southern disputes this and maintains that it was possibly a promotion and at worst a purely lateral transfer.

Harroun contends that his transfer to the warehouse was an adverse employment action because it involved "mostly manual labor such as opening and moving cases of wine" and because he had to pour samples to sales representatives, which he found embarrassing.  He also argues that as a district manager, he had supervised several employees but in the warehouse he did not supervise any.  According to Harroun, this represents the kind of "dramatic downward shift in skill level" that constitutes an adverse employment action.   *Dahm*, 260 F.3d at 257.  He also argues that during the portion of 2005 when he worked in the warehouse, he did not receive the full bonus and incentive compensation that he would have had if he remained a district manager.  He contends that this was a violation of the promise he was given when he took the position and is further evidence that the transfer was an adverse employment action.[4]

---

[3](...continued)
treated any differently from any other employee supervised by Bryant in the receipt of his 2009 evaluation

[4] Southern claims it only committed to "making him whole" financially for 2004.

Southern argues that the transfer was not an adverse employment action, because in the warehouse Harroun worked regularly with Romano, the president of the company. If anything, Southern argues, the transfer improved Harroun's career prospects for this reason. Further, Southern argues that the sales fulfillment manager position had previously been filled by two former district managers and that rather than involving a downward shift in skill, the position required Harroun to use his specialized skills and wine knowledge even more than he did in his district manager position. Finally, Southern argues that this was not an adverse employment action because the company offered to return Harroun to his old district manager position in November 2004 and eventually did return him to that position in September 2005.

The parties disagree about whether Harroun's transfer to the warehouse involved decreased responsibilities or benefits. Harroun clearly viewed his transfer to the warehouse as a demotion, not a lateral transfer or promotion. The mere fact that an employee "does not like the new position is irrelevant when there is no evidence that the transfer decreased [his] responsibilities or benefits." *Stutler v. Illinois Dept. of Corr.*, 263 F.3d 698, 702-03 (7th Cir. 2001). Harroun argues, however, that it was not simply that he subjectively preferred the district manager position but rather that the warehouse position involved lesser responsibilities and hampered his career prospects. He contends that in the warehouse position he did mostly manual labor, did not supervise any employees, and was embarrassed to be passing out wine samples to representatives previously supervised.

Taking the facts in the light that most favors Harroun (as the Court must on a motion for summary judgment) the Court concludes that a reasonable jury could find

14

that these changes in responsibilities represented a downward shift in skills and responsibility and thus constituted an adverse employment action.

Southern also argues that even if the transfer was a demotion, the move cannot be an adverse employment action because it offered to return Harroun to his original district manager position less than four months after the transfer. Harroun argues that the despite Southern's characterization, an offer to return to his former position four months later was not a "quick" reversal and thus should not defeat his claims. Though the short-lived nature of the transfer may affect a jury's assessment of the extent Harroun was damaged, its duration does not necessarily mean it was not an adverse employment action. "The mere fact that the [action] was reversed . . . and [the employee's] career put back on track does not diminish its importance during the time it lasted." *Molnar v. Booth*, 229 F.3d 593, 600 (7th Cir. 2000).

In sum, the Court concludes that a reasonable jury could find that Harroun's transfer to the warehouse was an adverse employment action.

### 2. *Direct method*

To prove a claim of age discrimination under the direct method, a plaintiff must produce "direct or circumstantial evidence that the employer's decision to take the adverse job action was motivated by an impermissible purpose." *Tubergen*, 517 F.3d at 473 (internal citation omitted). Circumstantial evidence "can come in the form of suspicious timing or behavior, or evidence that younger but similarly situated employees received better treatment." *Id.* at 473-74.

Harroun argues that he has presented a "strong mosaic of evidence" that his transfer to the warehouse was based on his age. Pl.'s Mem. in Opp. to Summ. J. at 8.

The main piece of evidence Harroun cites to support his claims is a statement he alleges his then-supervisor, Dan Crawley, made before Harroun was called into the meeting where he learned he would be transferred to the warehouse.  Harroun alleges that a week or two before the meeting, Crowley approached him and told him "something to the effect that they were going with youth at the DM position, and that if they wanted to get rid of you, they will, or they can, something to that effect." *Id.*, Ex. A (Harroun Dep.) at 131-132.  Harroun also alleges that the two other people who were asked to fill the sales fulfillment manager position in the warehouse were also over forty; that Harroun's supervisor in the warehouse, Dave Spanier, was over forty when he was transferred there; that Southern assigned some of Harroun's old accounts to an employee under forty when Harroun returned from medical leave in 2008; and that Southern "inexplicably referred to the ages of various employees, including Harroun," when it was deciding whom to select for a district manager position in 2005 after Harroun had rejected the offer to be returned to his territory.  *Id.* at 8.

The most potentially damaging item of evidence is the statement by Crowley that Southern had decided to go "with youth" in the district manager position.  Harroun is offering his recollection of Crowley's out-of-court statement for the truth of the matter asserted in the statement.  That is, he contends that the Court (and, at trial, the jury) should take this statement by Crowley to mean that Southern had, in fact, decided to replace older district managers with younger ones.  Because Harroun offers the statement for its truth, he must show that it is not hearsay or that it falls under an

exception to the hearsay rule.  *Stephens v. Erikson*, 569 F.3d 779, 793 (7th Cir. 2009).[5]

One could argue that Crowley's statement constitutes a statement by an agent of an opposing party, which under Federal Rule of Evidence 801(d)(2)(D) is not hearsay. In the context of employment actions, however, for a statement to be admissible under this provision, the declarant "must be involved in the decisionmaking process affecting the employment action."  *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007). Harroun has presented no evidence suggesting that Crowley was in any way involved in the decision to transfer Harroun to the warehouse.  In fact, the language of the alleged statement ("if *they* wanted to get rid of you *they* will") strongly implies that Crowley was not responsible for making the transfer decision.  The Court therefore concludes that Crowley's statement is not admissible under Rule 801(d)(2)(D).  Nor does the statement appear to qualify under any exception to the hearsay rule.  The statement is therefore inadmissible.

Harroun also contends that an employee under forty later received a portion of Harroun's old territory.  This does nothing to support Harroun's claim:  Harroun himself was returned to his original district manager territory from the warehouse in 2005, after he had first alleged age discrimination, and more than two years before the younger employee was assigned some of Harroun's old accounts when he was on medical leave.

That leaves the fact that several employees who were transferred to the

---

[5] In his brief, Harroun has offered argument supporting the admissibility of this statement.  Because, however Southern raise the issue of its admissibility for the first time in its reply brief, the Court will analyze its admissibility despite the absence of an argument by Harroun.

warehouse, including the two who were assigned to the sales fulfillment manager position before Harroun, were over forty, and the fact that Southern personnel allegedly referred to the ages of various employees when considering whom to hire for the district manager position Harroun had turned down.[6]  This evidence is insufficient under the direct method of proof for a reasonable jury to find in Harroun's favor:  it is not the kind of "suspicious timing or behavior, or evidence that younger but similarly situated employees received better treatment" that would constitute circumstantial evidence under the direct method of proof.  *Tubergen,* 517 F.3d at 473.  The Court therefore proceeds to evaluate Harroun's claim under the indirect method of proof.

   3.    *Indirect method*

   To establish a *prima facie* case of age discrimination under the indirect method, Harroun must demonstrate that he is over forty, his performance met the company's legitimate expectations, despite his performance he was subject to an adverse employment action, and the company treated similarly situated employees under forty more favorably.  *Martino v. MCI Comm's Servs., Inc.,* 574 F.3d 447, 453 (7th Cir. 2009).  The first two factors are not disputed, and the Court has already determined that, for purposes of a motion for summary judgment, a reasonable jury could find that Harroun's transfer to the warehouse was an adverse employment action.  Harroun has presented no evidence, however, that the company treated similarly situated employees

---

   [6] The reference to ages appeared in an e-mail in which Mug, a Southern human resources employee, was discussing possible candidates for the district manager position after Harroun had turned it down in his December 6 e-mail.  Mug's e-mail mentions two people as candidates who are both *over* the age of forty.  Pl.'s Mem. in Opp. to Summ. J., Ex. L.  The record indicates that the position ultimately remained vacant until Harroun returned to it in 2005.

under forty more favorably.  Thus, he has failed to establish a *prima facie* case.

Even assuming Harroun could establish a *prima facie* case, however, his claim would fail under the indirect method.  After a plaintiff has established a *prima facie* case, the burden shifts to the employer to present a non-discriminatory reason for the action.  Southern has provided evidence, consisting of depositions and corporate documents, illustrating the difficulties it was having in the warehouse, particularly with unloading wine shipments, managing wine products, and fulfilling wine orders.  Def.'s Mot. for Summ. J., Ex 6 (Romano Dep.) at 15-18; Ex. 7 (Goldberg Dep.) at 19-22; Ex. 8 (Acott Dep.) at 20-21; Exs. 15-16 (e-mails describing problems with warehouse); Ex. 17 (Goldberg memo detailing warehouse problems).  According to Southern, it assigned Harroun to the warehouse because as a district manager he had the experience with wine products that was necessary to help the warehouse get back on track.  Southern notes that the other two employees who were previously assigned to the position were also district managers and argues that this supports its contention that it was Harroun's skills, not his age, that prompted the transfer.

Because Southern has provided a non-discriminatory reason for its action, the burden shifts back to Harroun to show that a reasonable factfinder could determine that the company's proffered reason for the transfer is pretextual.  Harroun argues the proffered reason is a pretext for age discrimination because he had no experience in warehouse operations.  Further, he argues, Romano had never seen Harroun's resume before assigning him to the position and even asked  during their meeting why Harroun felt he was qualified for the job.  According to Harroun, this is evidence that Southern's claim that it assigned him based on his skills is pretextual, because Romano had no

knowledge of Harroun's background or skills when he gave Harroun the assignment.

There is evidence, however, that Romano assigned Harroun to the warehouse on the recommendation of John Acott, after Romano asked Acott for the name of someone with knowledge of wine who could help out in the warehouse. *Id.*, Ex. 6 at 22-23. Romano's testimony indicates that based on Acott's recommendation, he believed Harroun possessed the skills and knowledge needed for the task in the warehouse. *Id.* In light of this evidence, the fact that Romano was unfamiliar with Harroun's resume or asked Harroun why he was qualified for the job – a fairly typical question for an employer to ask – is not, without more, enough to allow a reasonable jury to conclude that the stated reason for the transfer was pretextual.[7]

For these reasons, the Court concludes that there is no genuine issue of material fact as to any of Harroun's age discrimination claims and that Southern is entitled to judgment on those claims as a matter of law. The Court therefore grants summary judgment in favor of Southern on count one.

## B.      Disability discrimination claim (count 3)

The Americans with Disabilities Act (ADA) prohibits employers from discriminating against employees on the basis of real or perceived disability. "A plaintiff seeking to avoid summary judgment must demonstrate that there is at least a genuine issue of material fact as to whether he is [or is perceived to be] disabled, whether he can perform the essential functions of the position, and whether he has suffered an

---

[7] Furthermore, it is not entirely clear which way Romano's unfamiliarity with Harroun cuts:  the fact that Romano knew so little of Harroun may undercut Harroun's argument that he had been singled out for the warehouse position in an attempt to force him out of the company because of his age.

adverse employment action because of his disability." *Kupstas v. City of Greenwood*, 398 F.3d 609, 611 (7th Cir. 2005).

As with claims under the ADEA, an employee making a claim under the ADA may present either direct or indirect evidence of employer discrimination. The direct method allows for two kinds of evidence: direct evidence and circumstantial evidence. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). "The former 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.' The latter is evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Id.* (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). Under the indirect method, an employee must first establish a *prima facie* case of discrimination, which requires him to show: "(1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) he suffered from an adverse employment decision because of his disability." *Pugh v. City of Attica,* 259 F.3d 619, 626 (7th Cir. 2001).

Harroun's claim is that he suffered an adverse employment action when Southern delayed his return to work after his medical leave. Harroun offers no direct evidence of discrimination on the basis of disability. Because the direct method of proof using circumstantial evidence and the indirect method of proof operate in largely the same way, the Court does not consider them separately.

A plaintiff may show that he is disabled within the meaning of the ADA by demonstrating that he has, or is "regarded as" having, an impairment that substantially

limits one or more major life activities. *Id.* Harroun's claim arises under the so-called "regarded as" prong. To prevail on a claim that type, the employee must demonstrate that his employer believed, rightly or wrongly, that the employee had an impairment that substantially limited one or more of his major life activities. *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004). "If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007).

The Court first examines whether Harroun's back injury constitutes a disability. ADA regulations provide that an individual is substantially limited in a major life activity if he is unable to perform such an activity or is "[s]ignificantly restricted as to the condition, manner, or duration under which" he can perform it as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1). Harroun's complaint and brief do not specifically identify those major life activities in which he believes Southern regarded him to be as substantially limited. Read broadly, however, his complaint and brief appear to focus on the activities of "lifting" and "working." Harroun's deposition testimony indicates that he was not limited in the major life activities of walking, bathing, dressing himself, performing manual tasks, driving, and sitting. Def.'s Mot. for Summ. J., Ex. 6 at 138-45.

In the Seventh Circuit, the definition of "major life activities" includes working, but only if the company views the employee to be significantly restricted in the ability to perform a broad range of jobs, hot just a particular job. *See EEOC v. Schneider Nat'l,*

*Inc.*, 481 F.3d 507, 511 (7th Cir. 2007); *Kupstas*, 398 F.3d at 612-13. "A demonstrated inability to perform a single, particular job does not render an individual substantially limited in the major life activity of working." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)). The Supreme Court has likewise stated that "to be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999).

The Seventh Circuit has held that back injuries such as Harroun's, including those that involved lifting restrictions on the order of those that doctors imposed on him, do not substantially the limit major life activities of working or lifting. *Squibb*, 497 F.3d at 782 (lifting restrictions limiting employee to occasional lifting of twenty-five to thirty pounds and regular lifting of only five to ten pounds did not substantially limit the major life activity of working because they did not prevent plaintiff from performing a broad range of jobs); *Mack v. Great Dane Trailers*, 308 F.3d 776, 783 (7th Cir. 2002) (permanent work restriction that prohibited all lifting on the job was insufficient to prove plaintiff was substantially limited in the major life activity of lifting because the doctor's report describing those lifting restrictions was "in reference to the limitations at work and nothing more," and "no jury could reasonably conclude from [employer's discussion] about work-related restrictions that [employer] believed [employee] was substantially limited in the sort of lifting that is central to most people's daily life.")

This does not necessarily defeat Harroun's claim, however. If Southern believed Harroun to be substantially limited in the major life activity of working, that would be sufficient to sustain a claim under the ADA, even though Harroun was not so limited.

23

Harroun alleges that Southern failed to return him to his district manager position after medical leave for his back in 2007 because it regarded him as disabled. He contends that his doctor cleared him for work with a ten-pound lifting restriction in March 2007 and cleared him for work with no restrictions in August 2007 but that Southern refused to return him to work as a district manager until 2008. He argues that when Southern asked Dr. Fletcher to evaluate him to see if he could perform the duties of the district manager position, it used an incorrect job description that said district managers had to lift up to one hundred pounds, when in reality district managers usually only lifted twenty-five pounds or less. He also claims that Southern could have brought him back to his district manager position earlier if it had assigned a merchandiser to help him with lifting, as it had done to accommodate Harroun's earlier back injuries in 2005 and 2006.

Southern argues that its decision not to reinstate Harroun earlier was based on the specific restrictions identified by various doctors who had examined him. Specifically Southern's selected doctor, Fletcher, concluded that Harroun could not safely perform all of the duties of a district manager without risking reinjury. Southern argues that there is no evidence that Harroun was cleared for work in March 2007, only that he was cleared for work in August 2007, at which time there were no open district manager positions available. It maintains that no district manager positions were available from that date until March 2008, when the company specifically created a new position for Harroun.

It is clear that the parties disagree about the nature of lifting performed by district managers. That alone, however, does not give rise to a viable ADA claim. Regardless of the dispute about how much a district manager is required to lift, there appears from

the record to be no disagreement about what Harroun's restrictions actually were. Because Harroun's actual limitations do not constitute a disability under the ADA, the mere fact that Southern was aware of those restrictions is insufficient to demonstrate that it perceived Harroun to be disabled. Southern was informed by Harroun's physician what Harroun's lifting restrictions were, an assessment confirmed by its own physician Dr. Fletcher, and nothing in the record indicates that Southern believed Harroun was more restricted than what the doctors had said. As the Court has already determined, Harroun's impairments do not, on their own, rise to the level of substantial limitations in the major life activities of working or lifting. Therefore, the mere fact that Southern knew of these limitations cannot establish that it regarded Harroun as disabled. *Squibb*, 497 F.3d at 786 ("[Plaintiff] has not presented any evidence that suggests that [employer's] beliefs about her limitations exceeded the scope of her *actual* limitations. As we have already concluded, the impairments she claims do not, on their own accord, rise to the level of substantial limitations in the major life activities [she claims]. Therefore, [employer's] *notice* of those disabilities cannot establish that it regarded [her] as disabled.") The Court concludes that no reasonable jury could find that Southern regarded Harroun as disabled.

Southern also argues that the remedy Harroun seeks – reinstatement to his former district manager territory – is unavailable under the ADA. Because the Court concludes that Harroun's claim fails for other reasons, it does not reach this argument.

## C.      Retaliation (count 2)

Harroun also alleges that Southern retaliated against him for filing an age

discrimination charge with the EEOC in April 2005. He contends that the delay in his return to work and reassignment to a different territory upon his return were in retaliation for filing this age discrimination charge.[8]

Like an age or disability discrimination claim, a retaliation claim can be proved using either the direct or indirect method. Under the direct method, a plaintiff makes out a *prima facie* case by showing that he was engaged in statutorily protected activity, he suffered an adverse action taken by his employer, and there is a causal connection between the two. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008).

The Court has already ruled that no reasonable jury could find that Harroun's transfer to a different territory was an adverse employment action, so it considers only the contention that the delay in his return to work was retaliatory. Assuming that a delay in return to work could count as an adverse employment action (a reasonable assumption, given the loss of wages that would accompany it), Harroun's claim still fails. There is nothing in the record that would allow a reasonable jury to conclude that there was any connection between Harroun's age discrimination complaint in early 2005 and his allegedly delayed return to work following medical leave in 2008. Rather, the record indicates that the delay was the result of Southern's reliance on the reports of a physician who believed Harroun could not yet return to work without re-injury, the

---

[8] In his complaint, Harroun also alleges that he was further demoted after being moved to the warehouse because he had to hand out samples to sales representatives. In his brief in opposition to summary judgment, however, Harroun treats the move to the warehouse and the assignment to hand out of samples as a single adverse action, so the Court does not consider the handing out of samples separately here.

disagreement about how much district managers have to lift, and the unavailability of a district manager position at the time Harroun was cleared for work. Though Harroun strongly disputes that physician's findings and contends that Southern used improper weight guidelines in its description of his position, nothing he has presented even hints that the delay was in any way related to his earlier age discrimination complaint. No reasonable jury could find a causal connection, even considering the evidence in the light most favorable to Harroun. *Agryopoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). Harroun's retaliation claim fails under the direct method.

Under the indirect method, a plaintiff must likewise show that he engaged in statutorily protected activity and that his employer took a materially adverse action, "but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009) (internal citation omitted).

Harroun's claim fails under this method as well. He has failed to present evidence that he was treated less favorably than any similarly situated employee who did not complain of discrimination. Harroun contends that Southern placed a younger employee in a territory that included many of Harroun's old accounts while Harroun was on medical leave, but the Court has already determined this transfer of regions and loss of specific accounts does not constitute an adverse employment action. Harroun has not presented evidence that any individual returning from medical leave who had made no complaint of discrimination was treated more favorably than he with regard to the time it took to get medical clearance from Southern's company-selected physician. He

similarly has not shown that a different job description was used when evaluating the medical fitness of anyone who had made no complaints of discrimination or that any employee who had not complained received accommodations when returning from medical leave that were denied to Harroun. The Court therefore concludes that Southern is entitled to summary judgment on Harroun's retaliation claim (count 2)

## Conclusion

For the foregoing reasons, the Court grants Southern's motion for summary judgment [docket no. 36]. The Clerk is directed to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 23, 2010